## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-4002-07-CR-C-NKL |
| | ) | |
| FREDERICK WILLIAM WEDDINGTON, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before this Court is defendant Weddington's July 27, 2006 motion to suppress statements. The Government has responded in opposition to the motion. A hearing was held on the motion on August 22, 2006. Defendant Weddington argues that his statements made to Drug Enforcement Agency (DEA) agents were not voluntary, but, instead, were the result of coercion. Defendant further argues that the agents failed to advise him of his Miranda warnings.

### Facts

The credible evidence presented at the hearing establishes that on November 21, 2005, DEA Agents Steve Mattas and Kyle Scheer went to defendant Weddington's house to interview him regarding his conversations captured on a wire intercept. When the agents arrived at Weddington's residence, Weddington came out of his residence to meet them. Mattas and Scheer identified themselves as DEA agents, and advised Weddington that they were there to follow up on a drug search warrant that had been executed at his residence in July 2005. Weddington invited the agents into his residence. Once inside the residence, Weddington called for his wife to join them, and the agents displayed their credentials upon request of Weddington and his wife. The agents, who were dressed casually, sat down on the couch in the living room and Weddington and his wife sat in the reclining chairs. The agents advised Weddington that he had been captured on wire intercept and that they had reason to believe he was involved with Rodney Keith Rodebaugh in distributing marijuana. The agents inquired with Weddington about what he knew about Rodebaugh. Weddington gave inculpatory statements to the agents regarding his involvement with Rodebaugh. Weddington expressed interest in cooperating with

the investigation, and the agents advised him how to contact the United States Attorney's Office. Weddington was not taken into custody during or after the interview.

On January 18, 2006, Weddington was arrested by the Jefferson City Police Department. DEA Agent Steve Mattas gave Weddington his <u>Miranda</u> warnings. Weddington acknowledged the previous conversation at his residence with Agents Mattas and Scheer and stated he still wanted to cooperate. Weddington agreed to read a report regarding the previous conversation, but upon reading the report, requested to speak with an attorney.

## Discussion

### *Miranda Warnings*

The first issue in this case is to determine whether defendant Weddington was "in custody" at the time he gave inculpatory statements to DEA Agents Mattas and Scheer, such that Fifth Amendment <u>Miranda</u> warnings were required. The parties agree that defendant Weddington did not receive his <u>Miranda</u> warnings.

When a person is taken into custody or otherwise deprived of his freedom of action in any significant way, he must be given the <u>Miranda</u> warnings. <u>United States v. Martin</u>, 369 F.3d 1046, 1056 (8th Cir. 2004). The warnings do not apply to a situation where the subject is not in custody and is not deprived of his freedom in any significant way. <u>United States v. Hamlin</u>, 432 F.2d 905, 908 (8th Cir. 1970).

To determine whether a person is in custody for purposes of <u>Miranda</u>, the ultimate question is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. <u>United States v. Czichray</u>, 378 F.3d 822, 826 (8th Cir. 2004). The only relevant inquiry in considering this question is how a reasonable person in the defendant's position would have understood the situation. <u>Id.</u> In making a determination, the court must consider the totality of circumstances that confronted the defendant at the time of questioning. <u>Id.</u> Determination of custody depends on the objective circumstances of the interrogation, not the subjective views harbored by either the interrogating officers or the person being questioned. <u>United States v. Martin</u>, 369 F.3d at 1056.

Relevant factors in assessing whether an interrogation was custodial are:

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do

2

so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

Id.

In the instant case, the court finds that, based upon the following relevant facts, Weddington was not in custody on November 21, 2005, when he made inculpatory statements to DEA agents. First, Weddington was not considered by the agents or Weddington to be under arrest at the time DEA agents interviewed him at his residence. Weddington voluntarily acquiesced to being interviewed and invited the agents into his residence. Weddington's wife was present during the interview, and at the time he made inculpatory statements to the agents. The agents were seated across from Weddington and his wife and were not positioned in a threatening or intimidating manner. Weddington was not restrained by the agents in any way. The agents were dressed casually and displayed no weapons. The conversation between Weddington and the agents was casual. No threats were made by the agents. There is no evidence that Weddington asked the agents to leave his residence during the interview. Weddington expressed interest in cooperating with the investigation. Weddington was not taken into custody at any time during or after the interview and, in fact, it was not until almost two months later that he was arrested on charges related to his conversation with the agents.

Moreover, despite Weddington's assertion of false promises being made by the agents, the credible evidence does not support those assertions. The credible evidence is that the agents did not use deceptive stratagems during questioning and made no offer that Weddington's statements were "off the record." Rather, the credible evidence is that, after inquiry by Weddington, the agents advised him they were not recording his statements and they wouldn't tell Rodebaugh of his statements. Additionally, the court finds that the agents made no false offers of leniency, and rather, made only accurate statements of the range of punishment and that cooperation could work to Weddington's benefit.

The court finds that the factual circumstances surrounding the November 21, 2005 DEA interview with Weddington are not indicative of a custodial interrogation. A reasonable person

Case 2:06-cr-04002-NKL   Document 158   Filed 09/12/06   Page 3 of 5

under the circumstances would not have believed he was in custody or that he was not at liberty to terminate the interview. Therefore, because the interview with Weddington was noncustodial, the agents were not required to give Weddington his <u>Miranda</u> warnings.

*Voluntariness of Statements*

The second issue in this case is whether the inculpatory statements of Weddington were made voluntarily. To determine if statements were made voluntarily, the court must consider the totality of circumstances and whether the defendant was somehow overreached. <u>Rachlin v. United States</u>, 723 F.2d 1373, 1377 (8th Cir. 1983). The question in each case is whether defendant's will was overborne at the time he confessed. <u>Haynes v. State of Washington</u>, 373 U.S. 503, ___, 83 S. Ct. 1336, 1343 (1963). The issue is whether the confession was extracted by any sort of threats, or violence, or obtained by any direct or implied promises or by the exertion of any improper influence. <u>Rachlin v. United States</u>, 723 F.2d at 1377. In considering the totality of circumstances, the court must consider the specific tactics utilized by law enforcement in eliciting the admissions, the details of the interrogation, and the characteristics of the accused. <u>Id.</u> <u>See also</u> <u>Colorado v. Connelly</u>, 479 U.S. 157 (1986) (conduct of law enforcement and the capacity of suspect to resist pressure to confess are the factors in determining the voluntariness of a defendant's statement).

In the instant case, Weddington contends that DEA agents made false promises of leniency to him, and stated that his statements were "off the record." As previously discussed in this report, the court finds that the credible evidence does not support these allegations. The credible evidence indicates that the agents made no statements suggesting that Weddington's statements were "off the record." Furthermore, the credible evidence indicates that the agents made no false offers of leniency; but made only accurate statements of the range of punishment and that cooperation could work to Weddington's benefit. <u>See</u> <u>Rachlin</u>, 723 F.2d at 1378 (no implied promise of leniency when agents communicated to defendant that it would be in his best interest to cooperate). Statements offered to law enforcement in hopes of leniency, rather than a promise of leniency, are not involuntary. <u>Id</u>.

Weddington further contends that his will was overborne because of his limited mental functioning. Weddington argues that his medications, Oxycontin and Xanax, as well as his

Case 2:06-cr-04002-NKL   Document 158   Filed 09/12/06   Page 4 of 5

limited sixth-grade education, limited his ability to make a voluntary, intelligent knowing statement.

Weddington's allegations of limited mental function are not credible. His testimony at the hearing, while he was on his medications, shows he has the ability to understand the court proceedings and the significance of them. He knew he was making statements and volunteering to cooperate in the hope of getting a better deal for himself. Moreover, the court notes that absent coercion by law enforcement, there is no basis for concluding denial of due process of law, regardless of a defendant's mental condition. Colorado v. Connelly, 479 U.S. at 164, 167.

<strong>Conclusion</strong>

Based upon the totality of circumstances, the court cannot say that defendant Weddington's statements to DEA agents were the result of an overborne will. There is no credible evidence that DEA agents engaged in any direct or implied promises, coercive tactics or threats. The credible evidence is that statements made by Weddington to law enforcement were made freely, voluntarily and without compulsion or inducement of any sort. Furthermore, because Weddington was not in custody at the time he made his statements to the agents, Miranda warnings were not required.

Based upon the foregoing,

IT IS RECOMMENDED that defendant Weddington's motion to suppress statement be denied. [119]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten (10) days. If additional time is needed, a motion for an extension of time must be filed within ten days. The motion should state the reasons for the request. See Nash v. Black, 781 F.2d 665, 667 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140 (1985)); Messimer v. Lockhart, 702 F.2d 729 (8th Cir. 1983). Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 12th day of September, 2006, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge

5